### 27272. JONESBORO PRODUCTION CREDIT ASSOCIATION v. TATUM.

DECIDED MARCH 2, 1939.

*Ben Anderson, Clifford Hendrix, Hendrix & Buchanan,* for plaintiff.

*G. H. Howard, G. B. Walker, Harry Belfor,* for defendant.

STEPHENS, P. J. Jonesboro Production Credit Association, on July 12, 1938, instituted a suit in trover in the municipal court of Atlanta, against Irvin Tatum, for the recovery of a pair of mules and some farm implements, and, accompanying the suit, made the necessary affidavit requiring bail. On the defendant's failure to produce the property, or to give bail, he was arrested and lodged in jail. On the following day, July 13, 1938, the defendant, as authorized under Code, § 107-205, filed with the judge of the municipal court a petition for release on the ground that the

defendant was unable to produce the property or give the required security. The plaintiff filed an answer to the defendant's petition for release, in which the allegations in the petition were denied. On the hearing it appeared from the evidence that some time before April 1, 1937, the plaintiff had made certain advancements to J. B. Tatum, a brother of the defendant, and took as security therefor certain farm implements and a pair of mules, all as the property of J. B. Tatum; that Irvin Tatum was no party to this transaction; that afterwards, on March 30, 1938, Jonesboro Production Credit Association foreclosed its claim against J. B. Tatum, and the levying officer entered up a levy on the mules and certain farm implements, but left the property in the possession of Irvin Tatum, taking his receipt therefor dated March 31, 1938; that later, on June 6, 1938, pursuant to an order of the court to sell the property, deputy marshals of the municipal court went to Irvin Tatum for the purpose of obtaining possession of the property and selling it, but found only a harrow; that the officers left without obtaining possession of the other property; that demand was afterwards made on Irvin Tatum for the property, and, upon his refusal to produce it, the bail-trover suit was, on July 12, 1938, instituted against him.

Irvin Tatum testified that when the officers came to make the levy on the foreclosure of the mortgage against J. B. Tatum, they came to Irvin Tatum's house and stopped; that he told them where J. B. Tatum lived, which was across the creek; that the officers did not look for the mules or farm tools; that the officers stated that they had a mortgage foreclosure against J. B. Tatum, that they would make a "conditional levy" and would come back and make a "permanent levy," and requested Irvin Tatum to "sign a conditional receipt;" that Irvin Tatum "signed a receipt of some kind;" and that he told the officers that the property was that of J. B. Tatum.

J. A. Heard testified that he sold the mules to Irvin Tatum in 1936, under a retention-of-title contract, and took them back about the last of March, 1938; that he did not remember the exact date; that he thought it was the last day of March or the first of April, 1938. There appears on the back of the contract an entry, signed by J. A. Heard, of a credit of payment by mules on April 1, 1938. Irvin Tatum testified that he returned the mules to Mr. Heard,

"around the 27th, 28th, or 26th of March, 1938," and that when he signed for the levying officers for the property on March 31, 1938, he had already surrendered the mules. The testimony of the levying officers was to the effect that the mules and farm implements were at Irvin Tatum's when the levy was made under the foreclosure of the Jonesboro Production Credit Association's claim against J. B. Tatum.

Tatum in his testimony expressed a willingness to return certain farm implements. His attorneys also offered to produce certain farm implements. It further appeared from the evidence that all the property which Irvin Tatum owned was an estimated equity of the value of about $100 in real estate belonging to his father's estate, and the possibility of making a crop which would consist of cotton and corn which had an estimated value and might be worth around $300. Irvin Tatum testified that he had not been able to make any crop, because his mules had been taken away from him.

After consideration of the evidence the court passed an order discharging the petitioner, Irvin Tatum, upon his production of certain farm implements recited in the order, but did not require him to produce the mules, and did not require him to give bond. The farm implements designated in the order to be returned by Irvin Tatum did not include all the implements which appeared in the receipt which Irvin Tatum had given to the levying officers when the original levy was made on the foreclosure of the mortgage against J. B. Tatum, and which were the same articles described in the trover suit against Irvin ·Tatum. The court's order was as follows: "After hearing the foregoing petition for release of Irvin Tatum, it is ordered that upon delivery to the marshal of the municipal court, at such reasonable time as may be convenient to said marshal, at such place as may be designated by said marshal, by the defendant, of [the farm property excluding the mules] the said Irvin Tatum shall be released from custody. Until the delivery of ‚the property, as above specified, he shall remain in the custody of the court. This July 20, 1938. T. O. Hathcock, judge, municipal court of Atlanta."

The court, in effect, found that Irvin Tatum, when the demand was made upon him for the property before the institution of the trover suit, and afterwards, was unable to produce the mules and

the farm implements which he had originally receipted for, and which were not included in the court's order, and that Irvin Tatum's reasons for not producing the property were satisfactory. The court also in effect held that Irvin Tatum was not able to give bond.

It is provided in the Code, § 107-205, that "when the defendant in any action for the recovery of personal property, in which bail is required, shall, by reason of his inability to give security, be held in imprisonment, he may make his petition . . to the judge of the court in which the suit is pending, in which he shall state that he is neither able to give the security required by law nor to produce the property, and can furnish satisfactory reasons for its nonproduction . . and if he [the judge] shall find that the petitioner can neither give the security nor produce the property, and that the reasons for its nonproduction are satisfactory, he shall discharge the petitioner upon his own recognizance, conditioned for his appearance to answer the suit; but otherwise he shall recommit him to custody." The inability of a defendant in trover to produce the property is his inability to produce it at the time of suing out the bail-trover process, and his continuing inability since, to the date of the hearing upon the petition for discharge. Code, § 107-201; *Ragan* v. *Chicago Packing & Provision Co.*, 93 *Ga.* 712 (21 S. E. 143) ; *Marsh* v. *Ben H. Fletcher Co.*, 17 *Ga. App.* 735 (88 S. E. 416) ; *Peavy* v. *Moore*, 19 *Ga. App.* 812 (2) (92 S. E. 299).

If Irvin Tatum was unable to produce the property when demand was made upon him for the property sometime after June 6, 1938, when the officers went to his place to take possession of it, and this inability continued to the time of the hearing of his petition for discharge, and his reasons for the nonproduction of the property were satisfactory to the judge hearing the petition for discharge, the judge was authorized, under the authority of the Code, § 107-205, to order the defendant discharged from custody; and if at the time of the hearing he was unable to give bond for the property, the judge was authorized to discharge him upon his own recognizance. Whether or not Irvin Tatum was ever in possession of the mules and the other property at the time of the levy upon them of the foreclosure of the mortgage against J. B. Tatum on March 30, 1938, or March 31, 1938, when Irvin Tatum receipted

the levying officers for the property, the evidence is sufficient to authorize a finding that when the levying officers went to take possession of the property, immediately before the institution of the trover suit against Irvin Tatum, Irvin Tatum had parted with possession of the mules by having surrendered them to J. A. Heard, and that at the time of the demand on him to produce the property and afterwards Irvin Tatum did not have possession or control of the property except the personal property he admitted having in his possession and which is recited in the judge's order. The judge therefore was authorized to find that Irvin Tatum was unable to produce the mules and the other property except that which Irvin Tatum admitted he had, and which the court specified in the order, and that his reasons for not producing the property were satisfactory.

Without recounting the evidence as to Irvin Tatum's worth and financial standing, it clearly appears that the judge was authorized to conclude that Irvin Tatum was not able to give bond for the property not produced, which consisted of the mules and some farming implements. The defendant in trover is not required to give bond where he produces the property. Code, § 107-203. The judge therefore did not err in ordering Irvin Tatum discharged upon his production of the articles of personalty named in the order, and without requiring bond.

*Judgment affirmed. Sulton and Fellon, JJ., concur.*